IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| HARALD MCPIKE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ZERO-GRAVITY HOLDINGS, INC. f/k/a<br>SPACE ADVENTURES, LTD., THOMAS<br>SHELLEY and ERIC ANDERSON,<br><br>　　　　Defendants. | Case No. 1:17cv562-TSE/JFA |

# MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

Kevin Quilty (Va. Bar No. 89501)
PILLSBURY WINTHROP SHAW
PITTMAN LLP
1200 Seventeenth Street, N.W.
Washington, DC 20036
(202) 663-8000
kevin.quilty@pillsburylaw.com

Of Counsel:

Deborah Baum
PILLSBURY WINTHROP SHAW
PITTMAN LLP
1200 Seventeenth Street, N.W.
Washington, DC 20036
(202) 663-8772
deborah.baum@pillsburylaw.com

*Counsel for Defendant Zero-Gravity
Holdings, Inc. f/k/a Space Adventures, Ltd.*

John M. McNichols (Va. Bar No. 66663)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000
jmcnichols@wc.com

Of Counsel:

John K. Villa
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000
jvilla@wc.com

*Counsel for Defendants Thomas Shelley and
Eric Anderson*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................ 1

FACTUAL BACKGROUND PLEADED IN THE COMPLAINT ............................... 3

    A.    The Parties. ................................................................................. 3

    B.    The Circumlunar Space Flight Purchase Agreement. ............................ 4

        1.    The "Space Flight Experience." .............................................. 4

        2.    Confidentiality and Non-Circumvention Provisions. ................. 5

        3.    Payment Terms. .................................................................. 5

    C.    McPike Asks To Change the Agreement. ............................................ 6

    D.    McPike's Default. ......................................................................... 7

    E.    McPike's Follow-Up Dealings with the Russians. ............................... 8

ARGUMENT ................................................................................................ 9

I.    MCPIKE'S FRAUD, CONVERSION, AND UNJUST ENRICHMENT CLAIMS ARE TIME-BARRED. ...................................................................................... 10

    A.    McPike's Common-Law and Statutory Fraud Claims Are Untimely Under Virginia's Two-Year Statute of Limitations. ...................................... 11

    B.    McPike's Conversion Claim Is Duplicative of His Fraud Claims and Untimely for the Same Reasons. ..................................................................... 12

    C.    McPike's Unjust Enrichment Claim Is Untimely Under Virginia's Three-Year Statute of Limitations. .................................................................. 15

    D.    The Statutes of Limitations Were Not Tolled. .................................... 16

II.    MCPIKE'S BREACH OF CONTRACT CLAIM FAILS FOR LACK OF A CAUSAL LINK TO THE LOSS OF HIS DEPOSIT. ...................................................... 19

III.    MCPIKE'S CONVERSION AND UNJUST ENRICHMENT CLAIMS FAIL BECAUSE THE AGREEMENT CONTROLS HIS DEPOSIT. ........................................... 22

    A.    McPike's Claim for Conversion Must Be Dismissed. .......................... 22

    B.    McPike's Unjust Enrichment Claim Must Be Dismissed. ..................... 23

CONCLUSION ............................................................................................. 25

# TABLE OF AUTHORITIES

## CASES

*Abi-Najm v. Concord Condo., LLC*, 699 S.E.2d 483 (Va. 2010) .................................................21

*Acorn Structures, Inc. v. Swantz*, 846 F.2d 923 (4th Cir. 1988) .................................................23

*Adair v. EQT Prod. Co.*, 2017 WL 1174024 (W.D. Va. Mar. 29, 2017).....................................22

*Airlines Reporting Corp. v. Pishvaian*, 155 F. Supp. 2d 659 (E.D. Va. 2001)............................12

*Alliance Grp. Servs., Inc. v. Grassi & Co.*, 406 F. Supp. 2d 157 (D. Conn. 2005) ......................23

*Arrington v. Peoples Sec. Life Ins.*, 458 S.E.2d 289 (Va. 1995)...................................................10

*Aziz v. Alcolac, Inc.*, 658 F.3d 388 (4th Cir. 2011)......................................................................9

*Bader v. Central Fidelity Bank*, 427 S.E.2d 184 (Va. 1993) ..................................................14, 15

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................9

*Blankenship v. Consolidation Coal Co.*, 850 F.3d 630 (4th Cir. 2017)........................................16

*Carley Capital Grp. v. City of Newport News*, 709 F. Supp. 1387 (E.D. Va. 1989) ....................19

*Command Cinema Corp. v. VCA Labs, Inc.*, 464 F. Supp. 2d 191 (S.D.N.Y. 2006) ...................23

*Condominium Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred
    Condominium, Inc.*, 709 S.E.2d 163 (Va. 2011)................................................................22, 23

*Daniel v. Wells Fargo Bank, N.A.*, 2013 WL 5723704 (E.D. Va. Oct. 17, 2013) ........................11

*Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005)......................................................................21

*E. W., LLC v. Rahman*, 873 F. Supp. 2d 721 (E.D. Va. 2012) .....................................................15

*Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443 (E.D. Va. 2009) ......................... *passim*

*FDIC v. Cocke*, 7 F.3d 396 (4th Cir. 1993) ................................................................................16

*Filak v. George*, 594 S.E.2d 610 (Va. 2004) ..............................................................................19

*Friedman v. Peoples Serv. Drug Stores, Inc.*, 160 S.E.2d 563 (Va. 1968)...................................13

*Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474 (4th Cir. 2006)........................................................21

*Goodman v. Praxair, Inc.*, 494 F.3d 458 (4th Cir. 2007) .............................................................10

*Harmon v. Dyncorp Int'l, Inc.*, No. 13-cv-1597, 2015 WL 518594
(E.D. Va. Feb. 6, 2015)............................................................................24

*Heintz Corp. v. Electro Methods, Inc.*, No. 94-cv-6916, 1995 WL 405721
(E.D. Pa. June 20, 1995) ........................................................................17

*Herbaugh v. Bank of Am., N.A.*, No. 15-cv-71, 2016 WL 3920483
(W.D. Va. July 15, 2016)...................................................................16, 18

*Hitachi Credit Am. Corp. v. SignetBank*, 166 F.3d 614 (4th Cir. 1999)......................19

*Informatics Applications Grp., Inc. v. Shkolnikov*, 836 F. Supp. 2d 400
(E.D. Va. 2011).............................................................................11, 12

*Inman v. Klockner-Pentaplast of Am., Inc.*, 467 F. Supp. 2d 642 (W.D. Va. 2006) ....................24

*J.F. Toner & Son, Inc. v. Staunton Prod. Credit Ass'n*, 375 S.E.2d 530 (Va. 1989) .............13, 14

*Jones v. Saxon Mortg., Inc.*, 980 F. Supp. 842 (E.D. Va. 1997)....................................11

*Khair v. Countrywide Home Loans, Inc.*, No. 10-cv-410, 2010 WL 2486430
(E.D. Va. June 14, 2010)........................................................................24

*Lion Assocs., LLC v. Swiftships Shipbuilders, LLC*, 475 F. App'x 496
(4th Cir. 2012).................................................................................23

*Lucas v. Henrico Cty. Sch. Bd.*, No. 11-cv-5, 2012 WL 1665428
(E.D. Va. Apr. 12, 2012)........................................................................11

*In re Outside Wall Tire Litig.*, Nos. 09-cv-1217, 09-cv-1218, 2010 WL 11474981
(E.D. Va. June 29, 2010).......................................................................15

*Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176 (4th Cir. 2009)..................................4, 9

*Phillips v. LCI Int'l, Inc.*, 190 F.3d 609 (4th Cir. 1999) ......................................7, 9

*Pigott v. Moran*, 341 S.E.2d 179 (Va. 1986) ................................................13, 14

*Pocahontas Sup. Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211 (4th Cir. 1987) ...................17

*Pyott-Boone Elecs., Inc. v. IRR Tr. for Donald L. Fetterolf Dated Dec. 9, 1997*,
918 F. Supp. 2d 532 (W.D. Va. 2013) ...........................................................19

*Ranney v. Nelson*, 176 F. App'x 405 (4th Cir. 2006) .........................................13, 14

*Resolution Tr. Corp. v. Walde*, 856 F. Supp. 281 (E.D. Va. 1994) ...........................12, 17

*Richmeade, L.P. v. City of Richmond*, 594 S.E.2d 606 (Va. 2004) ...............................13

*Richmond Redevelopment & Hous. Auth. v. Laburnum Constr. Corp.*, 80 S.E.2d
574 (Va. 1954) ...............................................................................................16

*RMS Tech., Inc. v. TDY Indus., Inc.*, 64 F. App'x 853 (4th Cir. 2003) .........................10

*Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F. Supp. 117 (S.D.N.Y. 1996) ...........23

*Rossmann v. Lazarus*, 2009 WL 87583 (E.D. Va. Jan. 9, 2009) ...................................11

*Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F. Supp.
2d 565 (E.D. Va. 2004) ..................................................................................15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ..............................9

*Tomlinson v. Goldman Sachs & Co.*, 682 F. Supp. 2d 845 (N.D. Ill. 2009) ................17

*Ulloa v. QSP, Inc.*, 624 S.E.2d 43 (Va. 2006) ...............................................................19

*United States v. Kivanc*, 714 F.3d 782 (4th Cir. 2013) ...................................................9

*Va. Imps., Inc. v. Kirin Brewery of Am., LLC*, 296 F. Supp. 2d 691
(E.D. Va. 2003) .............................................................................................11

*Weiler v. Arrowpoint Corp.*, No. 10-cv-157, 2010 WL 1946317
(E.D. Va. May 11, 2010) ...............................................................................24

*Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395 (4th Cir. 2006) ........................................7

## OTHER AUTHORITIES

5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
§ 1357 (3d ed. West 2017) .............................................................................10

Fed. R. Civ. P. 10(c) .........................................................................................................4

Fed. R. Civ. P. 12(b)(6) ................................................................................................1, 9

Va. Code Ann. § 8.01–229 .............................................................................................16

Va. Code Ann. § 8.01–243 ..............................................................................10, 13, 20

Va. Code Ann. § 8.01–246 ....................................................................................10, 15

Va. Code Ann. § 8.01–249 .............................................................................................11

Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1–196 to 59.1–207 ........9, 10

Defendants Zero-Gravity Holdings, Inc. f/k/a Space Adventures, Ltd., Thomas Shelley and Eric Anderson, by and through their undersigned counsel, respectfully submit this Memorandum of Law in Support of their Motion to Dismiss the Complaint of Plaintiff Harald McPike pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Sending a man to the moon and back has been described as the most difficult and important technological achievement in human history.  Thus far, it has been accomplished only a handful of times, and only by professional astronauts under the auspices of NASA.

Harald McPike, a hedge fund billionaire and polymath adventurer, wanted to be the first-ever private astronaut to make the trip.  In 2012, he contacted Virginia-based Space Adventures, the world's premier space-tourism company, about a "circumlunar" space flight that the company offered through its partnership with Russian space agencies.  As of then, Space Adventures had put seven private astronauts aboard the International Space Station, but McPike would have been the first to circumnavigate the moon.  The novelty and difficulty of this space flight were not lost on McPike, and indeed they were among the key reasons he wanted to undertake it.

Precisely because of the novelty and difficulty involved, and the concomitant multi-year effort to lay the logistical groundwork for such a flight, Space Adventures required McPike to pay a nonrefundable $7 million deposit shortly after signing his space flight contract, which he did in March 2013.  The remainder of McPike's payments—which totaled $150 million, inclusive of the deposit—were due at progressive milestones along the path to his intended moon flight.  But McPike got cold feet.

1

In July 2014, before ever making a second payment, McPike asked Space Adventures to modify their contract to allow him to make his payments into escrow.  Space Adventures did not agree, for reasons that are easy to grasp:  Planning for space flight requires vast expenditures over several years, and it cannot be accomplished through anything other than a pay-as-you-go arrangement—the same arrangement that Space Adventures has required of all of its private space flight clients.  So when McPike failed to remit any further payments toward his circumlunar flight, Space Adventures terminated the contract in March 2015, as it is expressly entitled to do when a client defaults.

Now, more than two years later, McPike has decided that he wants his deposit back.  To that end, he filed this lawsuit, alleging that Space Adventures was not in privity with the Russian Federal Space Agency "Roscosmos" in March 2013, and thus that it could not properly sell him a circumlunar space flight at the time of their contracting.  As McPike puts it, "Space Adventures sold Mr. McPike something it did not own."  Compl. ¶ 73.  In his view, this failing amounts to both a fraudulent misrepresentation and a breach of contract, and is sufficient to support each of his five legal theories.

It is not, and each of McPike's five claims is fatally flawed.  In the first place, McPike was well aware of the alleged lack-of-privity concern long before he filed suit, and thus most of his claims accrued well outside of Virginia's statutes of limitations.  But more fundamentally, under the plain language of the contract, McPike forfeited his deposit when he walked away after becoming dissatisfied with its payment terms.  Space Adventures' alleged failure of privity had nothing to do with that decision, and indeed McPike would have lost his deposit even if all of the alleged privity misrepresentations had been true.  Under these circumstances, there is no causal

link between Space Adventures' alleged failings and the loss for which McPike seeks recovery, and accordingly he has no cause of action.

Space flight is an expensive and risky venture.  A flight around the moon takes years of preparation.  Because of the enormous costs involved, payments cannot be made into escrow and conditioned on the ultimate success of the space flight.  A client cannot enter into a contract with his eyes wide open to that fact, then demand a refund when he later changes his mind about payment terms that he voluntarily agreed to.  Cold feet may be an entirely justifiable emotion when facing a trip around the moon, but they are not among the conditions that entitle a client to a refund.  Because that is the sum and substance of McPike's lawsuit, his claims should be dismissed with prejudice.

**FACTUAL BACKGROUND PLEADED IN THE COMPLAINT**[1]

### A.      The Parties.

Plaintiff Harald McPike is an Austrian national and resident of the Bahamas.  Compl. ¶ 13.  He is also a billionaire investor and adventurer who has skied to the North and South Poles and scaled some of the world's highest peaks.  *Id.* ¶¶ 2, 19.  Several years ago, Mr. McPike became interested in space flight as the continuation (and culmination) of his prior endeavors. *Id.* ¶¶ 4, 19.  A mission to the moon was to be his final frontier.  *Id.* ¶ 2.

Defendant Space Adventures, a Virginia entity, is a provider of private space travel through the space agencies of the Russian Federation.  Since 2001, the company has enabled seven clients to take a total of eight flights to the International Space Station aboard Russian spacecraft.  *Id.* ¶¶ 3, 20.  Defendants Thomas Shelley and Eric Anderson are officers of Space Adventures.  *Id.* ¶ 3.

---

[1]  All allegations in the Complaint are accepted as true for purposes of this Motion only.

### B.      The Circumlunar Space Flight Purchase Agreement.

In 2012, McPike noticed that Space Adventures was marketing an opportunity for a space

trip around the moon, i.e., a "circumlunar" mission.  *Id.* ¶ 4.  This was of great interest to

McPike, who contacted Space Adventures to inquire about participating.  *Id.* ¶¶ 4, 21.  After

several months of back-and-forth negotiations, and the exchange of several draft contracts,

McPike and Space Adventures entered into a "Circumlunar Space Flight Purchase Agreement"

on March 20, 2013.  *Id.* ¶¶ 6, 35 & Ex. 1.[2]

### 1.      The "Space Flight Experience."

Under the Agreement, Space Adventures agreed to provide McPike with a "Space Flight

Experience within the framework of the Russian Federal Space Program."  Ex. 1 § 3.01.01.

Consistent with this, the Agreement contained a representation by Space Adventures that it had

obtained from the Russian space agencies the right to provide a circumlunar flight:

> SA represents and warrants that it has reserved and owns the rights to
> provide a circumlunar space flight, after having obtained such rights from
> Rocket and Space Corporation Energia ("RSCE") . . . and from the Russian
> Federal Space Agency ("RFSA") . . . .

Compl. ¶¶ 32, 36; Ex. 1 § 3.09.

Space Adventures proposed a six-year term for the contract, subject to a two-year

extension if there had been "adequate progress along the way."  Compl. ¶ 30.  The final

Agreement reflected this idea, providing that the Agreement would have a maximum duration of

eight years, terminating in all events at the end of 2020.  *Id.* ¶ 42; Ex. 1 § 7.01.

---

[2]  Exhibit 1, the Agreement, was attached to McPike's Complaint and may properly be
considered for purposes of the present Motion.  *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176,
180 (4th Cir. 2009); Fed. R. Civ. P. 10(c).

### 2. Confidentiality and Non-Circumvention Provisions.

The Agreement also contained mutual confidentiality obligations.  Space Adventures agreed not to disclose various forms of McPike's personal and financial information.  Ex. 1 § 6.01.01.  Reciprocally, McPike agreed not to disclose information proprietary to Space Adventures.  *Id.* § 6.02.01.  Expressly exempted from such restrictions, however, was any information that "is or becomes publicly known through no fault of" Space Adventures or McPike.  *Id.* §§ 6.01.03, 6.02.03.

In addition, the Agreement contained a non-circumvention clause, under which McPike agreed, *inter alia*, not to work around Space Adventures and seek a space flight directly from the Russian space agencies:

> The Client hereby agrees not to Compete with or Circumvent (as defined below) SA [Space Adventures] . . . anywhere in the world during the term of this Agreement. . . .  The term "Circumvent" means attempt to work or to work with SA's vendors and providers directly without SA's involvement.

*Id.* § 6.02.04.

### 3. Payment Terms.

For payment terms, the Agreement specified a total contract price of $150 million, payable over six installments tied to various milestones as McPike's launch date approached.  Compl. ¶¶ 29, 37–41.

Given the expenditures that preparing for space flight would entail, all such payments were expressly nonrefundable, except in the limited circumstances of Article 7:

> Payments toward the Space Flight Experience Price listed above shall not be refundable to the Client, except as expressly provided in Article 7 of this Agreement.

Ex. 1 § 5.03.  Article 7 allowed for a refund only in the case of "non-performance or material default" by Space Adventures or the Russians as of the end of 2020.  Compl. ¶ 45; Ex. 1

Case 1:17-cv-00562-TSE-JFA   Document 24   Filed 06/29/17   Page 11 of 31 PageID# 122

§ 7.03.02.  Even in that event, moreover, the allowable refund was only a partial one, and would not include the initial $7 million contract deposit.  Compl. ¶ 45; Ex. 1 § 7.03.02.  That payment was not refundable under any circumstances, given that Space Adventures would begin incurring costs in furtherance of the client's mission upon execution.  *E.g.*, *id.* § 3.03.03 (requiring Space Adventures to prepare "any and all . . . relevant technical and mission-specific design elements, features and characteristics").[3]

Approximately a week after signing the Agreement in March 2013, McPike paid Space Adventures the nonrefundable deposit of $7 million.  Compl. ¶ 51.  It was the only payment he would ever make.

### C.    McPike Asks To Change the Agreement.

In early 2014, approximately one year after signing, McPike began to have concerns about the Agreement, in particular the payment terms.  *Id.* ¶ 55.  To address these concerns, Space Adventures voluntarily and in good faith agreed to extend the due dates for McPike's next two installment payments until July 2014, so that McPike could consider a full-day briefing by the Russians—which would take place in Moscow in June 2014—before committing further funds to the project.  *Id.* ¶¶ 56–57.

After the June 2014 Moscow visit and with his (extended) payment dates looming, McPike raised these concerns again.  *Id.* ¶¶ 57–58.  In an e-mail sent in July 2014, McPike (though his attorney) asked to amend the Agreement to allow him to make his payments "into a letter of credit with a bank," i.e., an escrow arrangement, rather than directly to Space

---

[3]  Although the payments were nonrefundable, signing the contract did not commit McPike to paying the full $150 million price.  Under Article 7, McPike retained the right to walk away from the Agreement without further obligation based solely on a "Change of Heart," provided that he did so before the fourth payment.  Compl. ¶ 44; Ex. 1 § 7.03.01.

Adventures as the Agreement required.  *Id.* ¶ 58.  Space Adventures responded that it would take this up with the Russians.  *Id.*

In that same July 2014 e-mail, McPike also asked Space Adventures to comment on a recent web article in the *Moscow Times* entitled, "Roscosmos Disavows Plan to Send Space Tourists to Moon."  *Id.* ¶ 59.  The article stated:

> Russia's space agency, Roscosmos, will not be involved in a plan to send two space tourists on a flight around the Moon and was not consulted about the project, the federal space agency said.
>
> The mission, hatched by U.S.-based space tourism firm Space Adventures and a major Russian spacecraft manufacturer, Energia Rocket and Space Corporation, would see two space tourists travel to the Moon aboard a modified Russian Soyuz spacecraft by 2017.  However, Roscosmos was kept out of the loop on the plan.
>
> . . . .
>
> "We are not participating in the moon project, we are not planning to modernize the Soyuz," [Roscosmos] was quoted as saying.

Ex. 2 at 3.[4]  In response, McPike alleges, he received oral assurances from Space Adventures that "the article was not correct, and that Roscosmos had a new head who was not aware of the arrangement with Space Adventures."  Compl. ¶ 59.

### D.    McPike's Default.

Space Adventures did not agree to McPike's proposed escrow arrangement, and McPike made no further payments.  *Id.* ¶ 60.  Consistent with its rights under the Agreement, Space Adventures sent formal notice of termination on March 24, 2015.  *Id.* ¶ 61.  It has since retained the $7 million deposit, as Section 7.02.01 of the Agreement expressly permits:

---

[4]  In deciding this Motion to Dismiss, the Court may properly consider documents that are incorporated into the Complaint by reference, *see, e.g.*, *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006), which is plainly the case for the e-mail and linked web article.

> SA can terminate this Agreement by giving written notice, if the Client fails to make any of the payments provided for . . . .  In the case of such termination, SA . . . shall be entitled to retain all payments that the Client had made prior to such termination as liquidated damages and not as a penalty.

Ex. 1 § 7.02.01.

### E.    McPike's Follow-Up Dealings with the Russians.

Thereafter, McPike continued to pursue a circumlunar flight through the Russians.

Compl. ¶ 62.  In May 2016, nearly two years after articulating his concerns to Space Adventures,

McPike contacted Roscosmos directly, asking about a moon flight and expressly mentioning his

prior circumlunar flight Agreement with the company.  *Id.*[5]  He received a written response on

July 25, 2016, stating:

> With regard to our relationship with Space Adventure (sic), Ltd, (S.A.) we would like to note that Roscosmos has successfully conducted 7 commercial space flights on the Russian "Soyuz" manned transport vehicle with the involvement S.A.  At present, however, there are no valid documents containing any legal obligations of Roscosmos to S.A.  Unfortunately, until receiving your letter, Roscosmos had no information about your contract with S.A.
>
> Regarding your participation in a space flight around the Moon, we would like to inform you that at present Roscosmos is considering future projects concerning lunar exploration (some of which would involve the participation of international partners), including the possibility of manned flights to the Moon, the establishment of a circumlunar orbital base and a manned lunar landing.  Nevertheless, such projects are only in the preliminary planning phase. . . .

*Id.* ¶¶ 63–64.

According to McPike, it was at this point that he first became aware that Space

Adventures' representations about its ability to provide a circumlunar flight through the

---

[5]  McPike's Complaint does not specify the form which that inquiry took, nor does it attach any related documents.

Russians were false.  *Id.* ¶ 65.  McPike ultimately filed this action on May 17, 2017,

approximately four years after signing the Agreement and paying his nonrefundable $7

million deposit, and three years after noting the *Moscow Times* article in which

Roscosmos denied having plans for a circumlunar flight.

## ARGUMENT

On a motion to dismiss under Rule 12(b)(6), a court reviews the complaint's factual

allegations for their legal sufficiency.  *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th

Cir. 2009).  A court may consider documents attached to the complaint or incorporated into it by

reference.  *Id.*; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007);

*Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).  To avoid dismissal, a plaintiff's

"[f]actual allegations must be enough to raise a right to relief above the speculative level, thereby

nudg[ing] their claims across the line from conceivable to plausible."  *Aziz v. Alcolac, Inc.*, 658

F.3d 388, 391 (4th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570

(2007)) (internal quotation marks omitted).

Here, McPike has pleaded five causes of action:  breach of contract (Count I), common-

law fraud (Count II), statutory fraud under the Virginia Consumer Protection Act, Va. Code Ann.

§§ 59.1–196 to 59.1–207 (Count III), conversion (Count IV), and unjust enrichment (Count V).

Each claim is premised on the same idea, namely that Space Adventures should be compelled to

return McPike's nonrefundable $7 million deposit because it did not own, and could not provide,

the moon flight that it sold him in March 2013.  Under the above-noted pleading standards, each

claim should be dismissed as untimely, legally deficient, or both.

I.    MCPIKE'S FRAUD, CONVERSION, AND UNJUST ENRICHMENT CLAIMS
      ARE TIME-BARRED.

The statute of limitations is an affirmative defense that may be raised in a threshold

motion to dismiss under Rule 12(b)(6).  *United States v. Kivanc*, 714 F.3d 782, 789 (4th Cir.

2013).  Virginia regards statutes of limitations as procedural and thus governed by forum law.

*RMS Tech., Inc. v. TDY Indus., Inc.*, 64 F. App'x 853, 857 (4th Cir. 2003).  Under Virginia law,

"[s]tatutes of limitations are strictly enforced and exceptions thereto are narrowly construed."

*Arrington v. Peoples Sec. Life Ins.*, 458 S.E.2d 289, 290 (Va. 1995).  At the pleading stage, a

claim must be dismissed if it is apparent on the face of the complaint that the action is time-

barred.  *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); 5B Charles

Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. West 2017).

By these standards, McPike's claims for common-law and statutory fraud, conversion,

and unjust enrichment are untimely as of the filing of this lawsuit in May 2017.  The fraud

claims are subject to two-year statutes of limitations,[6] and accrued not later than July 2014 (i.e.,

three years before filing) when McPike found the *Moscow Times* article stating that Roscosmos

was not involved in his intended space flight.  The conversion claim is merely a restatement of

McPike's fraud claims and is time-barred for the same reasons.  The unjust enrichment claim is

subject to a three-year statute,[7] and accrued in March 2013 (i.e., four years before filing) when

McPike paid the $7 million deposit that allegedly enriched Space Adventures unjustly.  Although

Virginia law tolls the running of limitations in cases where a defendant conceals the basis for the

plaintiff's claim, the facts that McPike has pleaded belie any such tolling argument here.

---

[6]  Va. Code Ann. § 8.01–243(A) (common-law fraud); *id.* § 59.1–204.1 (Virginia Consumer
Protection Act).

[7]  Va. Code Ann. § 8.01–246(4) (unwritten contracts).

### A.      McPike's Common-Law and Statutory Fraud Claims Are Untimely Under Virginia's Two-Year Statute of Limitations.

The core of McPike's Complaint is his common-law and statutory fraud claims in Counts II and III.  Both claims are premised on the allegation that Space Adventures told McPike that it possessed the rights to a circumlunar flight with the Russians and that such a flight was feasible in the eight-year term of the Agreement.  Compl. ¶¶ 77, 90.  According to McPike, he first became aware that these representations were false in July 2016, when he received the letter from Roscosmos denying a relationship with Space Adventures.  In fact, McPike's own allegations show his claims to have accrued nearly two years earlier.

In Virginia, fraud claims accrue when the alleged misrepresentation "is discovered or by the exercise of due diligence reasonably should have been discovered."  Va. Code Ann. § 8.01–249(1).  This is an inquiry-notice standard, meaning that the statute begins to run when there is "evidence of the *possibility* of fraud, not by complete exposure of the alleged scam."  *Va. Imps., Inc. v. Kirin Brewery of Am., LLC*, 296 F. Supp. 2d 691, 700 (E.D. Va. 2003) (emphasis added).[8]  Thus, where it is clear from the face of the complaint that there was "evidence of the possibility of fraud" more than two years before suit was filed, a fraud claim should be dismissed at the threshold.  *Id.*; *see, e.g.*, *Informatics Applications Grp., Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 425 (E.D. Va. 2011); *Daniel v. Wells Fargo Bank, N.A.*, 2013 WL 5723704, at *5–6 (E.D. Va. Oct. 17, 2013), *aff'd per curiam*, 571 F. App'x 197 (4th Cir. 2014); *Rossmann v. Lazarus*, 2009 WL 87583, at *6 (E.D. Va. Jan. 9, 2009).

---

[8]  *Cf. Jones v. Saxon Mortg., Inc.*, 980 F. Supp. 842, 847 (E.D. Va. 1997) (plaintiff "will not satisfy the requirements of due diligence when there have been prior warnings that something was amiss"), *aff'd per curiam*, 537 F.3d 320 (4th Cir. 1998); *Lucas v. Henrico Cty. Sch. Bd.*, 2012 WL 1665428, at *6 (E.D. Va. Apr. 12, 2012) ("Any claim that [plaintiff] required 'proof' before filing cannot serve as a basis to toll the statute of limitations."), *recommendation adopted in part and rejected in part*, 2012 WL 1665427 (E.D. Va. May 11, 2012).

Here, it is clear from McPike's Complaint and the documents referenced therein that he was on notice of the alleged fraud by July 2014.  At that time, he discovered a web article by the *Moscow Times* quoting the Russian Federal Space Agency as denying any relationship with Space Adventures for the very type of moon mission that McPike had purchased.  *See* Ex. 2 at 3 ("will not be involved"; "not participating").  Such statements were flatly inconsistent with Space Adventures' alleged representations that the company possessed the rights to, and could provide, a space flight through that very space agency.  This was not lost on McPike, who actually found the article, grasped its implications to his space flight, and promptly sought an explanation.  Compl. ¶ 59.  This is notice under any standard,[9] and it occurred more than two years before this lawsuit was filed.

### B.   McPike's Conversion Claim Is Duplicative of His Fraud Claims and Untimely for the Same Reasons.

In Count IV, McPike attempts to plead a claim of conversion, alleging that Space Adventures wrongfully converted the same nonrefundable $7 million deposit that is at issue in Counts II and III.  Compl. ¶¶ 99–100.  This claim is essentially a reprise of McPike's fraud claims, as the "wrongful" element of the conversion[10] is based entirely on a fraud theory:

> Defendants, by the fraudulent misrepresentations and acts detailed herein, wrongfully assumed or exercised authority over Mr. McPike's property, the $7 million . . . [d]eposit, thereby depriving Mr. McPike of possession over his property.  Defendants by their misrepresentations conspired to deprive Mr. McPike of his property and to continue the exercise of authority over

---

[9]  *See, e.g.*, *Informatics Applications Grp., Inc.*, 836 F. Supp. 2d at 425 (plaintiff "alert[ed] [to] the facts that form the basis of its fraud claim"); *Resolution Tr. Corp. v. Walde*, 856 F. Supp. 281, 288–89 (E.D. Va. 1994).  McPike appears to concede this point, as his Complaint admits that suit was not filed "within the limitations period," and instead appears to argue for timeliness solely on the basis of a tolling theory.  Compl. ¶ 82; *see also infra* Part I.D.

[10]  To assert a claim for conversion, a plaintiff must plead (i) the ownership of or right to possess property, and (ii) the defendant's wrongful exercise of dominion or control over that property.  *Airlines Reporting Corp. v. Pishvaian*, 155 F. Supp. 2d 659, 664 (E.D. Va. 2001).

his property, and by their fraudulent misrepresentations violated the common law duty not to defraud others.

*Id.* ¶ 99 (Count IV, "Trover and Conversion"). Under Virginia law, this claim is subject to the same two-year limitations period that applies to McPike's fraud claims, regardless of the form of action that McPike has chosen to plead.

By statute, claims for personal injuries or "for damages resulting from fraud" are subject to a two-year limitations period, while claims "for injury to property" are subject to a longer limitations period of five years. Va. Code Ann. § 8.01–243(A), (B). To determine which statute applies to a particular claim, Virginia courts do not focus on how the action is styled, but rather look to the "gist" of the claim and the nature of the alleged wrongdoing. *Pigott v. Moran*, 341 S.E.2d 179, 182 (Va. 1986); *accord J.F. Toner & Son, Inc. v. Staunton Prod. Credit Ass'n*, 375 S.E.2d 530, 531 (Va. 1989).[11] Where "the allegedly wrongful acts [are] aimed at the persons of the plaintiffs," causing them to sustain "financial damage personal to the individual," the shorter statute for personal injury or fraud claims will apply. *J.F. Toner & Son, Inc.*, 375 S.E.2d at 531. As the Fourth Circuit has explained, the "mere fact" that a plaintiff "characterize[s] his claim as one for injury to property does not control [the] analysis for purposes of identifying the appropriate statute of limitations." *Ranney v. Nelson*, 176 F. App'x 405, 408 (4th Cir. 2006).

Consistent with this, Virginia courts have repeatedly held that claims premised on fraud are subject to the limitations period for fraud claims, even where they involve the transfer of an interest in real property or the loss in value thereof. *See J.F. Toner & Son, Inc.*, 375 S.E.2d at

---

[11] *See also Richmeade, L.P. v. City of Richmond*, 594 S.E.2d 606, 608–09 (Va. 2004) ("[T]he object of the litigation and not its form determines the applicability of a statute of limitations."); *Friedman v. Peoples Serv. Drug Stores, Inc.*, 160 S.E.2d 563, 565 (Va. 1968) (applying personal injury statute of limitations to breach of contract and warranty claims because the purpose of the suit was to recover damages for personal injuries sustained when a pharmacist incorrectly filled a prescription).

530 (security interest); *Pigott*, 341 S.E.2d at 180–82 ("difference [in] the value of the land").

The Supreme Court of Virginia has consistently rejected the argument that the five-year statute

for injury to property should apply in such cases, reasoning that any loss of property is merely

attendant to the fraud and not the focus of the claim:

> The property had the same form, the same value, and was adapted to the
> same uses after the defendants' actions as before.  The defendants are
> simply alleged to have persuaded the plaintiffs to part with it.  Thus, the
> allegedly wrongful acts were aimed at the persons of the plaintiffs.

*J.F. Toner & Son, Inc.*, 375 S.E.2d at 531.

The same logic applies here.  McPike's putative "conversion" claim in Count IV is

expressly premised on fraud and, indeed, entirely duplicative of his two fraud claims.  *See*

Compl. ¶ 99.  It makes no difference that McPike has chosen to style his claim as one for

conversion, as the form of the action does not change the underlying factual basis for the claim.

*See Ranney*, 176 F. App'x at 408 ("injury to property" claim governed by Virginia's two-year

statute because "the resulting loss of property [plaintiff] alleges merely flows as a consequence

of his alleged [personal] injury").  As in *J.F. Toner & Son*, McPike's claim is about property

only in the sense that "[t]he defendants are . . . alleged to have persuaded [him] to part with it."

375 S.E.2d at 531.  Indeed, virtually every fraud claim involves some loss of property, and

having the statute-of-limitations analysis turn on the label of the claim would allow plaintiffs

simply to plead conversion as all-purpose substitute for fraud, rendering the two-year statute a

dead letter.  McPike's claim in Count IV is thus properly subject to the two-year statute of

limitations, and must therefore be dismissed.[12]

---

[12] The Virginia Supreme Court's decision in *Bader v. Central Fidelity Bank*, 427 S.E.2d 184
(Va. 1993), is not to the contrary.  There, the plaintiff sued a bank for conversion after a third
party—the plaintiff's husband—wrongfully withdrew funds from her account via forged checks.
The court rejected the bank's argument that the two-year limitations period should apply, noting

### C.   McPike's Unjust Enrichment Claim Is Untimely Under Virginia's Three-Year Statute of Limitations.

Count V of McPike's Complaint is a claim for unjust enrichment, and it is similarly premised on Space Adventures' possession of McPike's nonrefundable $7 million deposit. Compl. ¶ 103.  This claim, too, is untimely, although under a different limitations period and different rules of claim accrual.

Virginia Code § 8.01–246(4) provides that actions based on unwritten contracts must be brought within three years.  As courts have consistently held, this applies to claims based on implied contracts as well as express ones, and thus it includes claims for unjust enrichment.  *See, e.g.*, *In re Outside Wall Tire Litig.*, Nos. 09-cv-1217, 09-cv-1218, 2010 WL 11474981, at *3 (E.D. Va. June 29, 2010) ("Unjust enrichment claims are subject to a three-year statute of limitations . . . ."); *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 576 (E.D. Va. 2004).

Unlike for claims of fraud, "[t]he statute of limitations for unjust enrichment begins to run at the time the unjust enrichment occurred . . . not when a party 'knew or should have known' of the unjust enrichment."  *Tao of Sys. Integration, Inc.*, 299 F. Supp. 2d at 576 (citations omitted).  This occurs when the defendant first receives the benefit that, under the plaintiff's theory, it should not possess.  *See, e.g.*, *id.* ("at the moment defendants received a benefit from [plaintiff] without paying for its value"); *In re Outside Wall Tire Litig.*, 2010 WL 11474981, at *3 (claim accrued upon defendant's use of plaintiff's intellectual property); *E. W., LLC v. Rahman*, 873 F. Supp. 2d 721, 731 (E.D. Va. 2012) (same).

---

that the bank was *not* accused of fraud, and that the plaintiff's claim was based entirely on its handling of her money, not any action directed toward her personally.  *Id.* at 186–87.

As noted above, McPike's unjust enrichment claim is based entirely on his $7 million payment to Space Adventures.  Compl. ¶ 103.  McPike made that payment on March 28, 2013. *Id.* ¶ 51.  This was more than four years before he filed this action on May 17, 2017, and well outside of the three-year limitations period that governs his claim.

### D.     The Statutes of Limitations Were Not Tolled.

By statute, Virginia law permits the tolling of limitations only in the limited circumstance where a defendant "obstruct[s] the filing of [the plaintiff's] action."  Va. Code Ann. § 8.01–229(D).  Although fraudulent concealment is a recognized means of obstruction, it will warrant tolling only in "extraordinary circumstances."  *Blankenship v. Consolidation Coal Co.*, 850 F.3d 630, 639 (4th Cir. 2017).  Specifically, the alleged concealment "[i] must consist of affirmative acts of misrepresentation, [ii] must be of the character which involves moral turpitude, and [iii] must have the effect of debarring or deterring the plaintiff from his action."  *Herbaugh v. Bank of Am., N.A.*, No. 15-cv-71, 2016 WL 3920483, at *5 (W.D. Va. July 15, 2016) (internal quotation marks omitted).[13]  Even where these facts are present, moreover, concealment will not toll the statute of limitations indefinitely, but rather only "until a person intentionally misled by a putative defendant could reasonably discover the wrongdoing and bring action to redress it."  *FDIC v. Cocke*, 7 F.3d 396, 402 (4th Cir. 1993).

In his Complaint, McPike asserts a tolling theory based on concealment.  Compl. ¶ 82. On this point, he asserts that Space Adventures misled him about the *Moscow Times* article, telling him that the article was wrong and that the error could be chalked up to a new head at

---

[13]  *See also Richmond Redevelopment & Hous. Auth. v. Laburnum Constr. Corp.*, 80 S.E.2d 574, 582 (Va. 1954) ("The character of fraud necessary to toll the statute must be of a variety involving moral turpitude.  A defendant must intend to conceal the discovery of the cause of action by trick or artifice and must have thus actually concealed it from the plaintiff in order for the exception to apply."), *superseded by statute on other grounds*.

Roscosmos.  *Id.* ¶ 59.  McPike further asserts that he was prevented from making his own inquiries of the Russians due to the confidentiality and non-circumvention clauses in his space flight Agreement.  *Id.* ¶ 82.  These arguments are meritless.

In the first place, the case law is uniform that a defendant's mere denial of liability does *not* toll the running of limitations, for the sound reason that a defendant should not have to admit liability on the merits to avail itself of a limitations defense.  As the Fourth Circuit has explained:

> To permit a claim of fraudulent concealment to rest on no more than an alleged failure to own up to illegal conduct upon this sort of timid inquiry would effectively nullify the statute of limitations in these cases.  It can hardly be imagined that illegal activities would ever be so gratuitously revealed.

*Pocahontas Sup. Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218–19 (4th Cir. 1987); *accord Resolution Tr. Corp. v. Walde*, 856 F. Supp. 281, 289 (E.D. Va. 1994) ("[E]ven a defendant who fails to acknowledge his culpability in response to direct inquiries from the plaintiff . . . will not be equitably estopped from asserting the statute of limitations.").[14]  On this point, McPike gets no traction from the fact that Space Adventures' denial was bolstered by an explanation—i.e., that there was a new agency head at Roscosmos who was unfamiliar with the agency's prior dealings—because there is no allegation that that explanation was false.

For the same reason, McPike cannot establish tolling based on his contractual obligations under the Agreement.  Compl. ¶ 82.  Even if Space Adventures invoked those terms specifically to prevent McPike from contacting the Russians, no authority holds that a party's invocation of

---

[14]  *See also Tomlinson v. Goldman Sachs & Co.*, 682 F. Supp. 2d 845, 848 (N.D. Ill. 2009) ("[M]ere denials of liability . . . do not support tolling of the limitations period."), *aff'd sub nom. Premium Plus Partners, L.P. v. Goldman Sachs & Co.*, 648 F.3d 533 (7th Cir. 2011); *Heintz Corp. v. Electro Methods, Inc.*, No. 94-cv-6916, 1995 WL 405721, at *5 (E.D. Pa. June 20, 1995) ("If a denial of liability constituted fraud or concealment, the statute would be tolled in many cases.  Such a result would frustrate the purpose of the statute of limitations and force Defendants into a Hobson's choice of admitting liability or facing untimely claims.").

its contractual rights can equate to an affirmative act of concealment of the character of moral turpitude.  *See Herbaugh*, 2016 WL 3920483, at *5.  Moreover, nothing in either of the clauses at issue would have barred McPike simply from asking Roscosmos about the statements in the *Moscow Times* in order to determine whether to press on with his Agreement.  Such an inquiry would not amount to "circumventing" Space Adventures unless McPike thereafter entered into a separate contract with the Russians.  *See* Ex. 1 § 6.02.04.  Nor would it amount to a breach of confidentiality, as the Agreement expressly exempts information already in the public domain.  *See id.* §§ 6.01.03, 6.02.03.  In short, nothing in the confidentiality or the non-circumvention clause of the Agreement evidences a barrier to McPike' due diligence.[15]

But even assuming *arguendo* that McPike's due diligence could have been obstructed, his Complaint belies any assertion that it *actually was* obstructed, which is what the law requires.  *E.g.*, *Herbaugh*, 2016 WL 3920483, at *5.  Indeed, McPike's Complaint acknowledges that *despite* the alleged concealment of which he now complains, McPike went right ahead and contacted the Russians directly.  Compl. ¶ 62.  Although he made the inquiry in May 2016— which, as it happens, is within the relevant limitations periods—the Complaint is totally devoid of any explanation why he was uniquely able to do so at that time, and not, for example, a year earlier in March 2015 when Space Adventures terminated his Agreement.  This is fatal to any showing of actual obstruction.

---

[15]  McPike also blames the pre-contractual nondisclosure agreement, Compl. ¶ 82, but that agreement was expressly superseded by the space flight Agreement, *see* Ex. 1 § 8.11.  As with the Agreement, moreover, the terms of the NDA do not appear to have prevented McPike simply from requesting information from the Russians.  *See* Compl. ¶ 23.

## II.   MCPIKE'S BREACH OF CONTRACT CLAIM FAILS FOR LACK OF A CAUSAL LINK TO THE LOSS OF HIS DEPOSIT.

In Count I, McPike pleads a claim for breach of contract.  Like the above-noted fraud claims, this claim is again based on Space Adventures' statement that it possessed the rights to a circumlunar flight with the Russians.  Here, however, McPike cites that representation as a contractual promise (§ 3.09 of the Agreement), alleging that Space Adventures breached it because of the aforementioned lack of privity with the Russians.  On this basis, McPike again claims that he is entitled to a return of his $7 million deposit.  Compl. ¶ 74.  This claim is doomed at the threshold because there is no causal link whatsoever between Space Adventures' supposed lack of privity and McPike's loss of his nonrefundable deposit.

Under Virginia law,[16] the elements of a breach-of-contract claim are:  (1) a legally enforceable obligation of the defendant to the plaintiff, (2) the defendant's violation or breach of obligation, and (3) resulting harm to the plaintiff.  *Ulloa v. QSP, Inc.*, 624 S.E.2d 43, 48 (Va. 2006); *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004).  For the latter two elements, it is well settled that the defendant's breach must be the cause of the harm for which the plaintiff seeks recovery.  *Ulloa*, 624 S.E.2d at 48; *Carley Capital Grp. v. City of Newport News*, 709 F. Supp. 1387, 1396 (E.D. Va. 1989) (plaintiffs must prove "that the breaches are the cause of actual damages sustained").  Where such a causal link is absent, the plaintiff has no claim for relief under the contract.

---

[16]  McPike's contract claim is governed by Virginia law pursuant to the choice-of-law clause in the Agreement.  *See* Ex. 1 § 8.09.  Such clauses are honored in both federal and state courts in the Commonwealth, and "encompass all disputes that arise from or are related to an agreement," including tort claims.  *Pyott-Boone Elecs., Inc. v. IRR Tr. for Donald L. Fetterolf Dated Dec. 9, 1997*, 918 F. Supp. 2d 532, 545 (W.D. Va. 2013); *see also Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999).

McPike's contract claim is fatally deficient for want of this element.  By his own account, McPike's decision to walk away from the Agreement—thereby forfeiting his deposit under the plain terms of the contract—was *not* based on any breach.  Rather, it was entirely due to Space Adventures' (justifiable) refusal to amend the Agreement to allow McPike to make his payments into escrow.  McPike's "loss," therefore, arises solely from the fact that he came to dislike the contractual terms that he had voluntarily entered into, and then withdrew from the Agreement (by declining to make further payments) for reasons that he well understood would permit Space Adventures to keep his deposit.  Ex. 1 § 7.02.01 ("SA . . . shall be entitled to retain all payments that the Client had made prior to such termination . . . .").  Space Adventures' supposed lack of privity with the Russians had nothing to do with it.[17]

The prior case of *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443 (E.D. Va. 2009), is directly on point.  In that case, the plaintiff asserted a nearly identical breach claim against Space Adventures, alleging that the company "breached the Agreement . . . by not being in privity of contract with the RFSA [i.e., Roscosmos] when it entered the Agreement."  *Id.* at 449.  As here, the complaint in that case was deficient because of the absence of a causal link between the alleged lack of privity and the sued-upon harm:

> Plaintiff does not allege that Defendant's lack of authority or delay in obtaining authority to send clients to the [International Space Station] led, in any way, to Plaintiff's failure to fly. . . .  Defendant's misrepresentation in Article 1 ¶ 4 [of the Space Flight Agreement] was irrelevant to Plaintiff's failure to fly.

---

[17]   Indeed, according to McPike, he was not even aware of the alleged lack of privity until some years *after* the Agreement was terminated.  Compl. ¶ 65.  Although this does not prevent the running of limitations on McPike's fraud claims—their accrual turns on constructive rather than actual notice, Va. Code § 8.01–243(A)—it does prevent McPike from claiming now, after the fact, that the lack of privity was a motivating concern at the time he chose to walk away from the Agreement.

*Id.* at 452.[18]  The same logic applies here.  McPike's Complaint is devoid of any allegation that the alleged lack of privity had anything to do with his decision to walk away from the contract and forfeit his deposit.

McPike should not be heard to argue that a causal link can be found because he never would have entered into the Agreement or paid the $7 million deposit had it not been for Space Adventures' representations about its rights vis-à-vis the Russians.  Formulated in that way, McPike's claim is not a contract claim at all.  His purported loss under that theory is not due to any breach of a contractual promise, but solely to the fact that he was induced to enter the Agreement in the first place.  That is a claim for fraud, not contract.  *See Abi-Najm v. Concord Condo., LLC*, 699 S.E.2d 483, 490 (Va. 2010) ("The fraud alleged by the Purchasers was perpetrated . . . *before* a contract between the two parties came into existence, therefore it cannot logically follow that the duty . . . breached was one that finds its source in the Contracts.").

Even under that theory, moreover, a causal link is absent.  Because McPike withdrew from the contract for reasons unrelated to the alleged lack of privity, he would have lost his deposit *even if* Space Adventures had been in privity with the Russians and all of its statements on that point had been true.  No claim lies in that scenario, as a plaintiff must allege that he was harmed *both* because he relied on the defendant's statements *and* because the statements were false.  *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 343–44 (2005); *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 479 (4th Cir. 2006).  McPike, however, cannot allege those facts, as his decision to forfeit had nothing to do with Space Adventures' alleged lack of privity.

---

[18]  Although the Court in *Enomoto* made this observation in the context of dismissing the plaintiff's fraud claim, the *Enomoto* plaintiff's fraud and breach-of-contract claims were (as here) based on the identical representation, and the Court expressly considered the two claims together.  624 F. Supp. 2d at 451.

### III.   MCPIKE'S CONVERSION AND UNJUST ENRICHMENT CLAIMS FAIL BECAUSE THE AGREEMENT CONTROLS HIS DEPOSIT.

In addition to being time-barred, *see supra* Parts I.B & I.C, McPike's conversion and unjust enrichment claims (Counts IV and V, respectively) also fail for the independent reason that there exists a valid, express contract—i.e., the Agreement—which governs the $7 million deposit that is the focus of each claim.   Under Virginia law, neither claim can be maintained in such circumstances.

### A.   McPike's Claim for Conversion Must Be Dismissed.

"To recover for the tort of conversion, the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of [a] contract." *Condo. Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc.*, 709 S.E.2d 163, 171 (Va. 2011) (internal quotation marks omitted).   "Thus, a plaintiff cannot maintain a claim for conversion if the act of dominion exerted by the defendant was wrongful only because it breached the defendant's duty under a contract."   *Adair v. EQT Prod. Co.*, 2017 WL 1174024, at *32 (W.D. Va. Mar. 29, 2017).

These principles are fatal to McPike's conversion claim.   That claim—like all his claims—seeks the recovery of McPike's $7 million deposit.   Compl. ¶¶ 99–100.   As noted above, McPike paid that deposit pursuant to the express terms of the Agreement.   Ex. 1 § 5.02.01(i).   Similarly express terms governed what would happen to the deposit if McPike later walked away.   *Id.* § 7.02.01.   McPike's theory of conversion, moreover, is that Space Adventures obtained the deposit through false representations, which representations were also express terms of the Agreement.   *Id.* § 3.09.   In sum, it is impossible to envision any scenario under which Space Adventures could be deemed to be within its contractual rights under the Agreement, but nevertheless to have wrongfully converted McPike's deposit.   Under these circumstances, there

can be no independent claim for conversion.  *See, e.g.*, *Command Cinema Corp. v. VCA Labs, Inc.*, 464 F. Supp. 2d 191, 199 (S.D.N.Y. 2006) ("A conversion claim may only succeed if the party alleges a wrong that is distinct from any contractual obligations.").[19]

The previous decision in *Enomoto v. Space Adventures* is not to the contrary.  There, mindful of the apparent duplication between the plaintiff's breach-of-contract and conversion claims, the court "err[ed] on the side of restraint" and permitted the conversion claim to proceed only because it was, as of then, an open question in Virginia whether "a conversion claim may only succeed if the party alleges a wrong that is distinct from any contractual obligations."  624 F. Supp. 2d at 457.  That need for restraint no longer applies, as the Supreme Court of Virginia has since clarified that a conversion claim does not lie where the alleged duty "exist[s] between the parties solely by virtue of [a] contract."  *Condominium Servs., Inc.*, 709 S.E.2d at 171.  McPike's claim is legally deficient for that reason.

### B.   McPike's Unjust Enrichment Claim Must Be Dismissed.

In Virginia, "[a]n action for unjust enrichment is quasi-contractual in nature and may not be brought in the face of an express contract."  *Acorn Structures, Inc. v. Swantz*, 846 F.2d 923, 926 (4th Cir. 1988).  That is because "when such an express contract exists . . . there is no need to imply one because the parties have already negotiated an agreement."  *Lion Assocs., LLC v. Swiftships Shipbuilders, LLC*, 475 F. App'x 496, 503 (4th Cir. 2012).  Although a plaintiff may in some circumstances plead an implied or quasi-contractual theory in the alternative to a contract theory, the plaintiff who does so must substantiate the alternative theory factually by

---

[19]  *Alliance Grp. Servs., Inc. v. Grassi & Co.*, 406 F. Supp. 2d 157, 170 (D. Conn. 2005) ("Where plaintiffs have merely repeated . . . their breach of contract claims and called them conversions, the conversion claims must fail."); *Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F. Supp. 117, 124 (S.D.N.Y. 1996) (conversion claim will "be deemed redundant when damages are merely being sought for breach of contract").

alleging either (i) that the express contract is invalid, or (ii) that it does not cover the benefits at issue.  The failure to do so warrants dismissal at the pleading stage.  *See, e.g.*, *Weiler v. Arrowpoint Corp.*, No. 10-cv-157, 2010 WL 1946317, at *9 (E.D. Va. May 11, 2010) (dismissing unjust enrichment claim where "no factual allegations plausibly support[ed] the invalidity of the contracts").[20]

Here, there is no dispute about the existence of the Agreement between McPike and Space Adventures.  The Complaint is devoid of any suggestion that the contract is invalid.  And McPike's Complaint acknowledges that the subject matter of the alleged unjust enrichment—i.e., the $7 million *contract* deposit—is covered by the parties' Agreement.  *See* Compl. ¶¶ 43–45 (describing the Agreement provisions regarding refundability); *see also* Ex. 1 § 5.02.01(i).  No claim for unjust enrichment lies on these facts.  *See Inman v. Klockner-Pentaplast of Am., Inc.*, 467 F. Supp. 2d 642, 655 (W.D. Va. 2006) (dismissing unjust enrichment claim because "the benefits [the plaintiff] allege[d] to have conferred on Defendants [were] governed by the contract").  Simply put, the fact that McPike desires to avoid the refundability terms he agreed to has no effect at all on the fact that he agreed to them.

Here again, McPike finds no support in the *Enomoto* decision, as the unjust enrichment claim in that case is readily distinguishable.  624 F. Supp. 2d at 459.  The plaintiff in *Enomoto* alleged the existence and breach of *two* contracts: (i) a formal written space flight contract (akin to McPike's Agreement) *and* (ii) a separate oral agreement for the provision of a spacewalk.  *Id.* at 448–49.  Critically, the existence and validity of the oral spacewalk agreement were very

---

[20]  *See also Khair v. Countrywide Home Loans, Inc.*, No. 10-cv-410, 2010 WL 2486430, at *4 (E.D. Va. June 14, 2010) (dismissing unjust enrichment claim where "undisputed express [contract]" governed the relevant subject matter); *Harmon v. Dyncorp Int'l, Inc.*, No. 13-cv-1597, 2015 WL 518594, at *15 (E.D. Va. Feb. 6, 2015).

much in dispute, *id.* at 458, and the plaintiff accordingly pleaded unjust enrichment for payments made toward the spacewalk only, *id.* at 459.  On that basis, the court declined to dismiss the claim and allowed the plaintiff to proceed on an alternative theory.  *Id.*  Here, by contrast, there is only one contract at issue, and neither party disputes its existence or validity.  Because that contract governs the deposit that McPike seeks to recover, he has no basis to claim it on an unjust enrichment theory.  Accordingly, Count V must be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendants request that Plaintiff Harald McPike's Complaint be dismissed with prejudice.

Respectfully submitted,

  s/ *Kevin Quilty*                                          
Kevin Quilty (Va. Bar No. 89501)
PILLSBURY WINTHROP SHAW
PITTMAN LLP
1200 Seventeenth Street, N.W.
Washington, DC 20036
(202) 663-8000
kevin.quilty@pillsburylaw.com

Of Counsel:

Deborah Baum
PILLSBURY WINTHROP SHAW
PITTMAN LLP
1200 Seventeenth Street, N.W.
Washington, DC 20036
(202) 663-8772
deborah.baum@pillsburylaw.com


*Counsel for Defendant Zero-Gravity
Holdings, Inc. f/k/a Space Adventures, Ltd.*


June 29, 2017

  s/ *John M. McNichols*                          
John M. McNichols (Va. Bar No. 66663)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000
jmcnichols@wc.com

Of Counsel:

John K. Villa
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000
jvilla@wc.com


*Counsel for Defendants Thomas Shelley and
Eric Anderson*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 29th day of June 2017, I will electronically file the foregoing

with the Clerk of Court using the CM/ECF system, which will then send a notification of such

filing (NEF) to the following:

Thomas A. Clare
Megan L. Meier
CLARE LOCKE LLP
10 Prince Street
Alexandria, Virginia  22314
(202) 628-7400
tom@clarelocke.com
megan@clarelocke.com


Bruce G. Paulsen
Jeffrey M. Dine
SEWARD & KISSEL LLP
1 Battery Park Plaza
New York, New York  10004
(212) 574-1200 (T)
paulsen@sewkis.com
dine@sewkis.com


  *s/ John M. McNichols*
John M. McNichols (Va. Bar No. 66663)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000
jmcnichols@wc.com