IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | | |
|---|---|---|
| **HARALD MCPIKE,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 1:17-cv-562** |
| | ) | |
| **ZERO-GRAVITY HOLDINGS, INC.** | ) | |
| **f/k/a SPACE ADVENTURES, LTD.,** *et* | ) | |
| *al.,* | ) | |
| **Defendants.** | | |

## MEMORANDUM OPINION

Space tourism, once only the stuff of science fiction, is now, as this diversity case demonstrates, just another part of the current scene. In March 2013, plaintiff Harald McPike, a wealthy Austrian adventurer seeking to be a space tourist, entered into a contract with Space Adventures, Ltd. ("SA"),[1] a Virginia company specializing in space tourism, for a spaceflight around the moon and to the International Space Station. SA was to accomplish plaintiff's trip to space and around the moon with the aid of the Russian national space agency, Roscosmos. Understandably, this trip was expensive; plaintiff contracted to pay a non-refundable $30,000,000 deposit over the course of three installments and thereafter to make additional payments of $120,000,000, for a grand total of $150,000,000.[2] On March 28, 2013, plaintiff made his first $7,000,000

---

[1] At some point, SA changed its name to Zero-Gravity Holding, Inc.

installment payment of the required $30,000,000 deposit. Then during the summer of 2014, plaintiff effectively terminated the agreement by not making the second installment payment of the $30,000,000 deposit; instead, plaintiff sought a refund of his initial $7,000,000 deposit based on his belief that SA, contrary to its representations in the parties' Agreement, did not have the capacity to complete the spaceflight. SA refused to refund plaintiff's $7,000,000 deposit and plaintiff brought this action raising five claims: (i) breach of contract, (ii) fraud in the inducement, (iii) violations of the Virginia Consumer Protection Act, (iv) conversion, and (v) unjust enrichment. Defendants seek threshold dismissal of plaintiff's claims and, as the matter has been fully briefed and argued, it is now ripe for disposition.

I.[3]

Plaintiff Harold McPike is a private investor and adventurer who hails from Austria, but currently resides in the Bahamas. In the past, plaintiff has undertaken expeditions to the North and South Poles and has scaled many notable mountain peaks including Mt. Kilimanjaro. He now wishes to add space travel to his long list of adventures.

Defendant SA is a Nevada corporation with its principal place of business in Virginia. It specializes in providing space travel to private individuals and over the past

---

[2] Pursuant to Article 5.02 of the Agreement, plaintiff was to make three installment payments of $7,000,000, $8,000,000 and $15,000,000 to satisfy his obligation to pay a $30,000,000 non-refundable deposit.

[3] The facts recited here are derived from plaintiff's complaint and must be accepted as true, as required by law. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

several years has arranged eight flights to the International Space Station for seven different clients. SA's primary corporate officers are defendants Thomas Shelley ("Shelley"), SA's President, and Eric Anderson ("Anderson"), SA's CEO and Chairman of the Board. Both Shelly and Anderson are Virginia citizens.

In pursuit of his goal of spaceflight, plaintiff contacted SA in 2012 to express interest in a circumlunar mission. One of SA's employees responded to plaintiff's inquiry and informed him (i) that the cost of a circumlunar mission was approximately $150,000,000; and (ii) that he would have to enter into a mutual non-disclosure agreement before discussions and negotiations could continue. Plaintiff signed the non-disclosure agreement, completed and submitted a medical questionnaire and engaged in multiple conversations with Shelley and Anderson. On November 13, 2012, Shelley emailed a draft of the Circumlunar Space Flight Purchase Agreement (the "Agreement") to plaintiff; and on November 19, 2012, Anderson and Shelley orally represented that SA had an exclusive arrangement Roscosmos to complete a circumlunar mission and that the mission would be accomplished within eight years.

After engaging in several months of discussions and negotiations, the parties executed the Agreement on March 20, 2013. The following Agreement provisions are pertinent to the parties' dispute:

> o Article 1 of the Agreement, states that SA "owns the rights to provide a circumlunar space flight, after having obtained such rights from Rocket and Space Corporation Energia ('RSCE'), the official operator of the Soyuz-TMA spacecraft and from the Russian Federal Space Agency ('RFSA'), the official entity designated by the

sovereign government of the Russian Federation." *See* Circumlunar Space Flight Purchase Agreement, March 20, 2013, (Doc. 25).

o   In Article 3, Section 3.09 of the Agreement, SA further "represent[s] and warrant[s] that it . . . owns the rights to provide a circumlunar space flight." *Id.*

o   Article 5, Section 5.02 of the Agreement sets forth a detailed payment schedule that obligated McPike to pay varying amounts of money at certain contractual stages. *Id.*

o   Article 5, Section 5.03 explicitly states that "payments toward the Space Flight Experience Price listed above shall not be refundable to the Client, except as expressly provided in Article 7 of this Agreement." *Id.*

o   Article 6 of the Agreement contains several provisions, all of which relate to confidentiality, non-disclosure and non-competition. *Id.*

o   Article 7, Section 7.02.01 provides that SA can terminate the Agreement for non-payment and retain all previously received payments at liquidated damages. *Id.*

o   Article 7, Section 7.03.01 states that McPike could terminate the agreement, but, in that event, would forfeit the $7,000,000 deposit no matter what. *Id.*

o   Article 7.03.02 provides that even if the circumlunar mission has not been initiated by 2020, McPike's $7,000,000 deposit would be retained, but all other monies would be returned. *Id.*

o   And finally, Article 8, the Agreement's choice-of-law and choice-of-forum provision, provides that Virginia law governs this case and that any dispute must be tried in a state or federal court in the Commonwealth of Virginia. *Id.*

On March 28, 2013, plaintiff paid the initial deposit of $7,000,000 as set forth in the Agreement and throughout 2013 and 2014 took various steps to prepare for the circumlunar space mission, including undergoing medical examinations, reviewing

technical materials, continuing discussions with SA, and attending a meeting in Moscow in mid-January 2014.

In spring 2014, shortly before plaintiff's second installment payment of $8,000,000 was due, plaintiff expressed concern to SA about the method and schedule of payments under the Agreement given the inherent risks associated with the project. Specifically, plaintiff sought to modify the Agreement to permit him to make future payments into an escrow account. SA declined this proposal, but in an attempt to alleviate plaintiff's concerns, SA modified the Agreement to give plaintiff another three (3) months to make his second installment payment towards the deposit. Yet by July 2014, plaintiff still had not made this $8,000,000 installment payment toward the $30,000,000 deposit that was then due; instead, he continued to propose modifications to the Agreement to allow him to deposit future payments into an escrow account, a request that SA repeatedly declined. In any event, plaintiff thereafter made no further payments of any kind under the Agreement.

In July 2014, plaintiff discovered an English-language Russian publication of the Moscow Times that reported that Space Adventures had not consulted with Roscosmos about the circumlunar mission and had no contractual relationship with the Russian space agency.[4] Plaintiff, understandably concerned by this news report, emailed Shelley and

_____

Anderson and asked them to comment on the article.  In response, Anderson told plaintiff

that the article was incorrect and that Roscosmos had a new leader who was unaware of

SA's existing arrangements with Roscosmos.  Following this, plaintiff made no further

inquiries into this issue, but also made no further payments pursuant to the Agreement.

Citing plaintiff's failure to make any additional installment payments on the $30,000,000

deposit, SA terminated the Agreement by written notice on March 24, 2015, and retained

plaintiff's initial $7,000,000 deposit payment.

---

[4] Because the complaint references the Moscow Times article and the content of the article is integral to plaintiff's fraud and breach of contract claims, the article is appropriately considered at the motion to dismiss phase.  *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir.2009) (in reviewing motions to dismiss, a court may consider allegations in the complaint, matters of public record, and documents attached to the motion to dismiss that are integral to the complaint and authentic).  In pertinent part the Moscow Times article provides as follows:

> Space Adventures said in May that it had already found two people willing to pay $150 million to fly to the Moon. Russia's space agency, Roscosmos, will not be involved in a plan to send two space tourists on a flight around the Moon and was not consulted about the project, the federal space agency said.

> The mission, hatched by U.S.-based space tourism firm Space Adventures and a major Russian spacecraft manufacturer, Energia Rocket and Space Corporation, would see two space tourists travel to the Moon aboard a modified Russian Soyuz spacecraft by 2017. However, Roscosmos was kept out of the loop on the plan. The organizers "could have consulted with us before making such loud announcements," said Denis Lyskov, Roscosmos's deputy chief in charge of piloted flights, Izvestia reported Monday. "We are not participating in the moon project, we are not planning to modernize the Soyuz," Lyskov was quoted as saying.

Anna Dolgov, *Roscosmos Disavows Plan to Send Space Tourist to Moon*, Moscow Times, June 23, 2014.

In May 2016, sixteen months after SA terminated the Agreement, plaintiff contacted Roscosmos to arrange an alternative space mission and to inquire into Roscosmos' relationship with SA. By letter dated July 25, 2016, Roscosmos responded to plaintiff's communication, in relevant part, as follows:

> With regard to our relationship with Space Adventure, Ltd., we would like to note that Roscosmos has successfully conducted 7 commercial space flights on the Russian "Soyuz" manned transport vehicle with the involvement of SA. At present, however, there are no valid documents containing any legal obligations of Roscosmos to SA. (Pl.'s Compl. at ¶¶ 63 and 64.)

In response to further inquiries by plaintiff regarding its relationship with SA, Roscosmos sent another letter on December 26, 2016, stating that:

> Unfortunately, we are unable to provide you with information on relationships with 'Space Adventures' as such information is confidential and may not be disclosed to third parties. In addition, neither the current nor previous Federal Space Programs of the Russian Federation envisaged implementation of projects associated with manned missions to the Moon.

*Id.* at ¶ 67.

Armed with this information, plaintiff filed a five-count complaint against SA on May 17, 2017, alleging: (i) that he was fradulently induced to enter into the Agreement by SA's misrepresentations regarding its relationship with Roscosmos; (ii) that SA violated Virginia's Consumer Protection Act, Va. Code § 59.1-196, et seq., by engaging in fraud; (iii) that SA breached the Agreement by failing to have a contractual relationship with Roscosmos, contrary to SA's representation in the Agreement; (iv) that

SA tortiously converted plaintiff's $7,000,000 deposit; and (v) that SA was unjustly enriched by its retention of plaintiff's $7,000,000 payment without delivering the promised spaceflight.

Defendants seek dismissal of plaintiff's claims on several grounds: (i) that plaintiff's claims for fraud, conversion and unjust enrichment are time-barred; (ii) that plaintiff's conversion and unjust enrichment claims fail as a matter of law because the parties' express contract controls the loss or return of plaintiff's deposit; and (iii) that plaintiff's breach of contract claim fails as a matter of law because there are no factual allegations connecting the alleged breach to plaintiff's alleged contractual damages.

For the reasons that follow, plaintiff's conversion claim is time-barred and plaintiff's unjust enrichment claims fails to state a valid cause of action; but his two fraud claims and his breach of contract claim survive the motion to dismiss.

## II.

Defendant first contends that plaintiff's fraud in the inducement and consumer fraud claims are time-barred by Virginia's two-year statute of limitations. In response, plaintiff says he filed his complaint within two years of actually discovering the fraud, and thus his claims are timely.

As an initial matter, the parties correctly agree that Virginia law governs plaintiff's claims.[5]  The parties also correctly agree that Virginia law applies a two-year limitations

---

period to both common law fraud (Count II) and consumer fraud (Count III).[6] That is, however, where the parties' agreement ends; there is a sharp dispute between the parties as to when plaintiff "by the exercise of due diligence reasonably should have . . . discovered" the alleged fraud.[7]

In this respect, defendants argue that plaintiff's factual allegations in the complaint settle the matter, as they establish that plaintiff actually discovered the fraud in July 2014

---

[5] Under Virginia law, contractual choice-of-law provisions are dispositive on the question of what substantive law applies to a given cause of action. *See Settlement Funding, LLC v. Von Neumann-Lillie*, 274 Va. 76, 80 (2007) ("If a contract specifies that the substantive law of another jurisdiction governs its interpretation or application, the parties' choice of substantive law should be applied."). Here, Article 8, Section 8.09 of the Agreement makes clear that the "Agreement shall, in all respects (including its existence, validity, interpretation, implementation, termination and enforcement) be governed by the laws of the Commonwealth of Virginia." (Doc. 25.) Accordingly, Virginia law is applicable to the parties. Additionally, in a federal diversity action, as here, state law governs the existence and interpretation of any statute of limitation. *See Castillo v. Emergency Med. Assocs., P.A.*, 372 F.3d 643, 646 (4th Cir. 2004); *Conner v. St. Luke's Hosp. Inc.*, 996 F.2d 651, 653–55 (4th Cir.1993).

[6] *See* Va. Code § 8.01–243 ("every action for damages resulting from fraud, shall be brought within two years after the cause of action accrues."); Va. Code § 59.1-204.1 ("Any individual action pursuant to § 59.1-204 for which the right to bring such action first accrues on or after July 1, 1995, shall be commenced within two years after such accrual. The cause of action shall accrue as provided in § 8.01-230."). *See also Broadnax v. Dep't of Veteran Affairs Washington Mut. Bank*, No. CIV.A. 2:04CV693, 2005 WL 1185809, at *6 (E.D. Va. May 19, 2005) (discussing the statutes of limitations for common law and statutory fraud).

[7] Virginia Code § 8.01–249(1), provides, in pertinent part, that a fraud action accrues "when such fraud, mistake, misrepresentation, deception, or undue influence *is discovered or by the exercise of due diligence reasonably should have been discovered*." Va. Code § 8.01-249(1) (emphasis added). Moreover, to exercise due diligence, as contemplated by the statute, a plaintiff must use "'[s]uch a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent [person] under the particular circumstances; not measured by any absolute standard, but depending on the relative facts of the special case.'" *Dunlap v. Texas Guaranteed*, 590 F. App'x 244 (4th Cir. 2015) (quoting *Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 118 (2008)); *see also Va. Imps., Inc. v. Brewery of Am.*, LLC, 296 F. Supp. 2d 691, 699 (E.D. Va. 2003) (quoting *STB Mktg. Corp. v. Zolfaghari*, 240 Va. 140 (Va. 1990)).

when he read the Moscow Times article that stated that SA had no contractual arrangement with Roscosmos. Plaintiff disagrees, arguing that after reading the Moscow Times article, he promptly contacted Anderson at SA who reassured plaintiff that the article was incorrect and that Roscosmos' new leader was unaware of the arrangements that existed between SA and Roscosmos. Plaintiff argues that this reassurance made it reasonable for him, at that time, to undertake no further investigation into the matter. Plaintiff further argues that he did not actually learn of defendants' fraud until July 25, 2016, when he received Roscosmos' letter stating that, at that time, there were then no "valid documents containing any legal obligations of Roscosmos to SA." (Pl.'s Compl. at ¶¶ 63 and 64.) Defendant disagrees with this, arguing that a reasonably prudent person in plaintiff's position—having invested a non-refundable $7,000,000 in a space venture—would have conducted further investigation into the matter, at least to the extent of contacting Roscosmos. Plaintiff responds that the Agreement's confidentiality and non-compete clauses precluded him from contacting Roscosmos directly. Even assuming this were true, plaintiff's response does not address what prevented him from contacting Roscosmos between March 24, 2015, when SA terminated the Agreement, including its confidentiality provision, and May 2016, when he ultimately contacted Roscosmos for the first time.

    In sum, then, defendants' motion to dismiss on statute of limitations grounds presents the question of when precisely plaintiff discovered, or in the exercise of due diligence reasonably should have discovered the alleged fraud by SA. This is a question of fact "not measured by any absolute standard, but depending on the relative facts of the

special case. *Jones v. Shooshan*, 855 F. Supp. 2d 594, 604 (E.D. Va. 2012) (quoting *Va. Imports, Inc.*, 296 F.Supp.2d at 699)).  Indeed, courts generally have required questions of this sort to be reserved for the jury. [8]  Yet it is also true that a statute of limitations question under Va. Code § 8.01-249(1) may be resolved on a threshold motion to dismiss, but only if all the facts necessary for resolution of the motion appear on the face of the complaint or are otherwise indisputable.  Here, the statute of limitations defense cannot be resolved on the face of plaintiff's complaint because he has alleged facts that could cause reasonable jurors to disagree as to when, in the exercise of due diligence, plaintiff did discover or should have discovered the alleged fraud.[9]

Accordingly, the motion to dismiss plaintiff's fraud claims based on the statute of limitations must be denied at this time; instead, the issue will be resolved at summary judgment or trial.

### III.

In addition to his common law and consumer fraud claims, plaintiff also pleads a claim for conversion, which defendants seek to dismiss on the ground that the claim is

---

[8] *Louisville & N.R. Co. v. Saltzer*, 151 Va. 165 (1928) (holding that when there are disputed facts as to when the injury first occurred, the question of when the right of action accrued becomes one for a jury); *S. Ry. Co. v. Watts*, 134 Va. 503 (1922) ("[W]e are constrained to the conclusion that the question as to when the first actual damage resulted . . . was one for the jury to determine. The question is important because this case turns upon the effect of the statute of limitations.").

[9] *Cf. Dey v. D.C. Capital Partners, LLC*, No. 1:12-CV-315, 2012 WL 12870302, at *2 (E.D. Va. Aug. 14, 2012) (limitations defense must be apparent from the face of the complaint to dismiss claims as time-barred at motion to dismiss stage); *Johnson v. Hill*, 965 F. Supp. 1487, 1489 (E.D. Va. 1997) ("[T]o dismiss a case . . . because the statute of limitations has expired, the court must find that the expiration of the statute of limitations is clear on the face of the complaint.").

time-barred.[10]   The parties dispute, however, which statute of limitations applies to plaintiff's conversion claim: the two-year limitations period for fraud or the five-year limitations period for injury to property.

Defendants argue that plaintiff's conversion claim is nothing more than a fraud claim masquerading as an injury to property, and therefore plaintiff's claim is governed by Virginia's two-year statute of limitations for personal injuries, Va. Code § 8.01-243(A), rather than the five-year limitations period for injury to property, Va. Code § 8.01-243(B).  In support of this argument, defendants cite *J.F Toner & Sons, Inc. v. Staunton Prod. Credit Ass'n*, 375 S.E.2d 530, 531 (Va. 1989), for the proposition that the two-year statute of limitations applies when a fraud is directed at the plaintiff's person and any attendant property loss flows from that fraud.  That is precisely the situation presented here.  Plaintiff's property (*i.e.* the $7,000,000 deposit installment) would have suffered no injury but for defendants fraudulently inducing plaintiff to enter into the Agreement, a tortious act that was directed at plaintiff's person not his property. Accordingly, the two-year statute of limitations applies.

Despite plaintiff's protestations to the contrary, this case is easily distinguishable from *Bader v. Cent. Fid. Bank*, 245 Va. 286, 290 (Va. 1993).[11]  In *Bader*, the plaintiff

---

[10] To state a claim for conversion in Virginia, a plaintiff must allege sufficient facts to establish the following elements: (1) the wrongful assumption or exercise of the right of ownership over goods or chattels, (2) that belong to another, (3) inconsistent with, or in denial of the owner's rights. *See Michigan Mut. Ins. Co. v. Smoot*, 129 F. Supp. 2d 912, 918 (E.D. Va. 2000) (citing *Economopoulos v. Kolaitis*, 259 Va. 806 (Va. 2000)).

sued her bank for cashing three of her checks based on the endorsement of her husband, who later absconded with the funds. Id. In *Bader*, the Supreme Court of Virginia found that the five-year limitations period for injury to property applied to Mrs. Bader's conversion claim because the defendant bank "wrongfully exercised authority over her funds and, thus, deprived [her] of possession and use of those monies." *Id.*   Notably, though, the bank's wrongdoing was not directed at Mrs. Bader's person; instead, the bank simply mishandled Mrs. Bader's money.   Here, by contrast, SA directed its alleged fraud at the plaintiff's person and plaintiff lost his $7,000,000 deposit because of the fraud. Thus, Virginia's two-year limitations period for personal injury actions applies and plaintiff's claim is time-barred.   Nor can plaintiff rely on the discovery rule to rescue his conversion claim, because he cites no Virginia authority for the proposition that the discovery rule applies to conversion claims, and moreover the majority of courts to consider the issue have held that the discovery rule does not apply to save otherwise untimely conversion claims. *See Rodrigue v. Olin Employees Credit Union*, 406 F.3d 434, 445 (7th Cir. 2005) (noting that the vast majority of jurisdictions have refused to apply the discovery rule to conversion claims) (collecting cases).

Accordingly, plaintiff's conversion claim is time-barred and must be dismissed.

---

[11] Plaintiff also cites *Condo. Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo.*, Inc., 281 Va. 561, 573 (2011), which stands for the unremarkable proposition that a plaintiff may bring an independent claim for conversion if a defendant unlawfully takes the plaintiff's property following the expiration of the parties' contract.

IV.

Plaintiff claims that SA unjustly enriched itself by retaining his $7,000,000 deposit given that SA had no means of transporting the plaintiff to the moon and back.[12] Defendants attack this claim on two grounds: timeliness and legal sufficiency.

A three-year limitations period applies to plaintiff's unjust enrichment claim. *See* Va. Code Ann. § 8:01–246(4).[13] Here, plaintiff's unjust enrichment claim accrued in March 2013, the date he paid the $7,000,000 deposit and did not receive the expected benefit of SA's promise regarding its contractual relationship with Roscosmos. *See GIV, LLC v. Int'l Bus. Machines Corp.*, No. CIV.A. 3:07CV067-HEH, 2007 WL 1231443, at *2 (E.D. Va. Apr. 24, 2007) (unjust enrichment claim accrues "when the unjust enrichment actually occurs, *i.e.*, when the expected compensation is not paid, not when a party knew or should have known of the unjust enrichment."). Because plaintiff filed his complaint in May 2017, his unjust enrichment claim is untimely by almost fourteen (14) months unless, of course, § 8:01–246(4)'s three-year limitations period can be equitably tolled.

To begin with, neither party cites any authority clearly holding that the statute of limitations for unjust enrichment can be equitably tolled under Virginia law. Yet even

---

[12] To state a claim for unjust enrichment under Virginia law, a plaintiff must allege: (1) a benefit was conferred to the defendant; (2) the defendant knew of the benefit; and, (3) the defendant received the benefit under circumstances that would make it inequitable to keep the benefit without paying for it. *See Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 116 (Va. 2008); *see also Harrell v. Colonial Holdings, Inc.*, 923 F. Supp. 2d 813, 827 (E.D. Va. 2013).

[13] *See also Heritage Disposal & Storage, L.L.C. v. VSE Corp.*, No. 115CV1484AJTMSN, 2017 WL 361547, at *11 (E.D. Va. Jan. 24, 2017); *E. W., LLC v. Rahman*, 873 F. Supp. 2d 721, 730 (E.D. Va. 2012); *Belcher v. Kirkwood*, 238 Va. 430, 432 (Va. 1989).

assuming that § 8:01–246(4)'s three-year limitations period may be (and should be) equitably tolled,[14] plaintiff's unjust enrichment claim nonetheless fails because plaintiff is not challenging the validity of the underlying contract.

If one area of Virginia law is certain, it is that a plaintiff cannot simultaneously recover in contract and in equity (*i.e.* quasi-contract).[15] Yet there is some disagreement as to whether a plaintiff, at the pleading stage, may assert alternative claims for unjust enrichment and breach of contract.[16] Although it makes perfect sense for a plaintiff to plead quasi-contractual claims in the alternative when the applicability or enforceability of the contract is in dispute, the rationale for alternative pleading disappears when neither party contests the applicability or validity of the contract. *Weiler v. Arrowpoint Corp.*, No. 1:10CV157, 2010 WL 1946317, at *9 (E.D. Va. May 11, 2010) (*Royer v. Bd. of County Supervisors of Albemarle County*, 190 Ga. 816, 10 S.E.2d 867 (Va. 1940)). Because unjust enrichment claims are only appropriate in the absence of an enforceable

---

[14] To warrant equitable tolling of a statute of limitations, a plaintiff must prove "'by clear, precise, and unequivocal evidence' that (1) a 'material fact was falsely represented or concealed'; (2) the 'representation or concealment was made with knowledge of the fact'; (3) the 'party to whom the representation was made was ignorant of the truth of the matter'; (4) the 'representation was made with the intention that the other party should act upon it'; the 'other party was induced to act upon it'; and (6) the 'party claiming estoppel was misled to his injury.'" *Heritage Disposal*, 2017 WL 361547, at *12 (quoting *Boykins Narrow Fabrics Corp. v. Weldon Roofing & Sheet Metal, Inc.*, 266 S.E.2d 887, 890 (Va. 1980)).

[15] *See Harrell*, 923 F. Supp. 2d at 826 (citing *Southern Biscuit Co. v. Lloyd*, 174 Va. 299 (Va. 1940)) ("Defendants cannot simultaneously recover in contract and equity.").

[16] *See, e.g., Harrell*, 923 F. Supp. 2d at 826 ("Although Defendants cannot recover for breach of contract and unjust enrichment, they are allowed to plead these inconsistent theories."); *Maggard v. Essar Glob. Ltd.*, 16 F. Supp. 3d 676, 688 (W.D. Va. 2014) (holding that plaintiff could plead unjust enrichment and breach of contract as alternative theories of liability, but only when the applicability or enforceability of the contract is in dispute).

contract, and neither party here challenges the validity or enforceability of the Agreement between plaintiff and SA, plaintiff's unjust enrichment claim must be dismissed

## IV.

The final dispute between the parties concerns the sufficiency of plaintiff's factual allegation regarding the causation element of his breach of contract claim.[17]  Succinctly put, plaintiff claims that SA breached the Agreement by not having a formal relationship with Roscosmos to provide the contracted circumlunar space mission.[18]  SA counters by noting that, even if SA technically breached this promise, the breach was immaterial because plaintiff cannot show that this breach caused plaintiff's damage.  More specifically, SA asserts that this breach could not have been the cause of plaintiff's damage because in 2014 plaintiff had already decided not to continue his obligations under the Agreement by ceasing to make the requisite deposit payments.  And more precisely, SA argues that plaintiff's "preemptive" breach occurred two years before he actually learned of SA's breach.  Plaintiff counters, arguing that he ceased making contractual payments in 2014 because of legitimate concerns over SA's ability to perform.

---

[17] "'[T]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation.'" Navar, Inc. v. Fed. Bus. Council, 291 Va. 338, 344, 784 S.E.2d 296, 299 (2016) (quoting Ulloa v. QSP, Inc., 271 Va. 72, 79, 624 S.E.2d 43, 48 (2006)).

[18] In Article 1 and Article 3, Section 3.09 of the Agreement, SA "represent[ed] and warrant[ed] that [it] ha[d] reserved and own[ed] the rights to provide a circumlunar space flight, after having obtained such rights from RSCE, the official operator of the Soyuz-TMA spacecraft, and from the Russian Federal Space Agency ('RFSA')." Pl.'s Compl. at ¶ 32.

In sum, SA disputes whether its breach of Articles 1 and 3 of the Agreement defeated "an essential purpose of the contract." *See Horton v. Horton*, 254 Va. 111, 487 S.E.2d 200 (1997) ("A material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract."). Stated differently, SA claims that it could have provided plaintiff with a trip to the moon despite having no formal contractual relationship with Roscosmos. Because causation and the closely related issue of materiality are factual in nature, deciding these issues as a matter of law at this stage is inappropriate. *See Shipp v. Connecticut Indem. Co.*, 194 Va. 249, 257, 72 S.E.2d 343, 348 (1952) (whether the breach of a contractual provision is material is a question of fact best left to the jury). Here, after granting plaintiff all of the reasonable inferences as required at this stage, it is clear that plaintiff has alleged sufficient facts to proceed to discovery on his breach of contract claim. [19]

Accordingly, defendant's motion to dismiss plaintiff's breach of contract claim must be denied.

---

[19] It is worth noting that in his response to the motion to dismiss and at oral argument, plaintiff asserted that he was not pleading a breach of contract claim, despite explicitly labelling Count 1 "Breach of Contract"; but was instead raising a breach of express warranty claim. Plaintiff contends that under Virginia law, breach of an express warranty can be proven without any reference to causation. In any event, plaintiff did not plead an express warranty claim in his complaint and he cannot, by raising a new argument in his brief or at oral argument, constructively amend his complaint. *See Harris v. Reston Hosp. Ctr., LLC*, 523 F. App'x 938, 946 (4th Cir. 2013) (holding that a plaintiff cannot "constructively amend the complaint.").

## V.

For the reasons stated in this Memorandum Opinion, plaintiff's conversion claim is time-barred and plaintiff's unjust enrichment claim fails as a matter of law. Plaintiff's two fraud claims and his breach of contract claim survive defendant's motion to dismiss.

An appropriate order will issue.

Alexandria, Virginia
November 21, 2017

T. S. Ellis, III
United States District Judge